**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **IN RE CARMAX, INC. SECURITIES LITIGATION** | * * * * * * | **CIVIL NO. JKB-25-3602** |

* * * * * * * * * * * *

# MEMORANDUM

Defendants CarMax, Inc. ("CarMax"), William D. Nash, Enrique N. Mayor-Mora, and Jon G. Daniels have filed a Motion to Transfer (ECF No. 49) in this putative securities class action. The Motion is fully briefed and no hearing is required. For the reasons set forth below, the Motion will be granted and this case will be transferred to the Eastern District of Virginia.

## *I. Background*

This putative securities class action was originally filed in this Court in November 2025, and the complaint has been amended twice. (*See* ECF Nos. 1, 5, 39.) The Court previously appointed the Excavators Union Local 731 Pension Fund and City of Birmingham Retirement and Relief System as lead plaintiffs. (*See* ECF Nos. 15, 16.) The operative complaint alleges that:

> [T]hroughout the Class Period, Defendants misled investors by failing to disclose that: (1) CarMax's CarMax Auto Finance ("CAF") segment's first quarter 2026 ("1Q26") loan loss provisions were inadequate to cover the losses from, among other things, CarMax's underperforming 2022 and 2023 vintage loans; (2) CarMax had an inventory oversupply, coupled with depressed sales prices and declining sales of vehicles at its retail lots in the first quarter of 2026 ("1Q26"); (3) this oversupply caused substantial depreciation in the value of CarMax's inventory; (4) CarMax's mid-2025 sales boost was largely driven by customers rushing to purchase used cars amid macroeconomic concerns, and not due to CarMax's unique operational offerings; and (5) based on the foregoing, Defendants materially understated loan loss provisions, and overstated earnings while misleading investors about the Company's business, operations, and growth prospects.

(ECF No. 39 ¶ 2.) Plaintiffs point to various allegedly false and/or misleading statements made by the Defendants in certain disclosures. (*See generally id.*) When Defendants made two corrective disclosures in September 2025 and November 2025, CarMax's stock price "plummeted." (*Id.* ¶ 5.)

Defendants now move for this case to be transferred to the Eastern District of Virginia.

## *II. Legal Standard*

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A district court must first consider whether the action could have been brought in the destination venue. *Kukich v. Electrolux Home Prods., Inc.*, Civ. No. ELH-16-3412, 2017 WL 345856, at *3 (D. Md. Jan. 24, 2017). Then, "[d]istrict courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

The parties disagree as to the burden placed upon Defendants. That disagreement is unsurprising, given that:

> A long list of cases can be cited for the basic proposition that the balance of convenience must be "strongly" in favor of the moving party before a transfer will be ordered under Section 1404(a). Despite this impressive line of authority, it is likely that this common formulation overstates the showing that is required. The language that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" initially appeared in an important 1947 Supreme Court case on forum non conveniens [*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)]. In the years shortly after Section 1404(a) was enacted, at a time when many federal courts thought that the statute was merely a codification of the forum non conveniens doctrine, the cases quite naturally applied that language in cases arising under the new statute. In 1955, however, the Court made clear that transfers can be granted under Section 1404(a) more freely than

> dismissals under forum non conveniens [*Norwood v. Kirkpatrick*, 349 U.S. 29, (1955)]. By that time, decisions requiring the balance to be "strongly" in favor of the moving party for transfer had acquired a momentum of their own. Many courts later cited and quoted those cases without recognizing that the original source of the theory was forum non conveniens doctrine, and that application of this standard to Section 1404(a) is doubtful.

15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3848 (4th ed.) (footnotes omitted); *see also Elliot AmQuip, LLC v. Bay Elec. Co.*, Civ. No. ELH-10-3598, 2011 WL 2174893, at *10–11 (D. Md. June 2, 2011) (discussing *Gulf Oil* and *Norwood*).

Cases within this district reflect this confusion. Some cases refer to the balance needing to tip "strongly" in favor of the party moving for a transfer of venue. *See, e.g.*, *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" (internal quotation marks and citations omitted).) Others do not. *See, e.g.*, *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004) ("To prevail on a motion to transfer venue under § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." (internal quotation marks and citations omitted)).

Suffice it to say for purposes of this Memorandum and Order that "a motion to transfer under Section 1404(a) should not be granted lightly" and "a defendant seeking transfer under Section 1404(a) has the burden of establishing why the court should override whatever weight the court believes should be given to the plaintiff's venue preference." 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3848 (4th ed.); *see also Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79–80 (4th Cir. 1967) (explaining that § 1404 "is more lenient in authorizing transfers than is the common law doctrine of forum non conveniens" while also "recogniz[ing] the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown.").

## *III. Discussion*

The parties do not dispute that this case could have been brought in the Eastern District of Virginia, where Defendants seek to transfer this case, and the Court agrees that it could have been brought in that District. Thus, the Court examines the four factors it must weigh in determining whether to transfer a case. For the reasons set forth below, the Motion will be granted, and this case will be transferred to the United States District Court for the Eastern District of Virginia.

### A. Plaintiff's Choice of Venue

With respect to the first factor, courts generally give "substantial weight" to the plaintiff's choice of venue. *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) ("As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." (internal quotation marks and citation omitted).) "In class actions, however, courts often accord less weight to the plaintiff's choice where several plaintiffs, each connected to different forums, may be able to demonstrate that each respective forum is appropriate for adjudication of the class claims." *Dietrick v. Apex Sys., LLC*, Civ. No. 19-0006-PX, 2019 WL 1745994, at *2 (D. Md. Apr. 18, 2019); *see also Kukich*, 2017 WL 345856, at *7; *Evans v. Arizona Cardinals Football Club, LLC*, Civ. No. WMN-15-1457, 2016 WL 759208, at *3 (D. Md. Feb. 25, 2016).

A plaintiff's choice of forum is owed substantial deference—even in the class action context—where "the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." *Kukich*, 2017 WL 345856, at *7 (internal quotation marks and citation omitted) (collecting cases); *see also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (". . . Plaintiffs' choice of forum is amenable to inexpensive discovery and trial because the forum is home both to the Plaintiffs and to key non-party witnesses. Where that is the case, a plaintiff's choice of forum is entitled to significant weight that is not materially diminished merely

because the case is a class action.")." On the other hand, "a court need not accord the choice as much weight when the forum has no connection with the matter in controversy." *Kukich*, 2017 WL 345856, at *7 (internal quotation marks and citation omitted); *see also Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 319 (D. Md. 2012) ("[W]hen the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation, less weight is given to the plaintiff's choice.").

Defendants argue that Plaintiffs' choice of venue should not be given much deference, given that this is a putative class action, Maryland is not Plaintiffs' home, and Maryland does not bear a substantial relation to the cause of action. With respect to the last point, Defendants provide a declaration of Craig Cronheim, Chief Human Resources Officer at CarMax. (ECF No. 49-4.) Mr. Cronheim attests that "CarMax is a public company organized under the law of Virginia, with its headquarters and principal office located [in] . . . Richmond, Virginia" (*id.* ¶ 5); that two of the individual Defendants maintain their primary residences in Virginia and worked primarily out of CarMax's headquarters in Richmond (*id.* ¶¶ 9–10, 13); that the third individual Defendant lives and works in Georgia but "makes frequent visits to CarMax's headquarters in Richmond, Virginia, including for every CarMax quarterly earnings call" (*id.* ¶¶ 11, 14); that "CarMax's decisions related to earnings releases, SEC filings, and public disclosures are primarily made by CarMax's employees at its corporate headquarters in Virginia" (*id.* ¶ 16); that "CarMax's board of directors regularly meets in Virginia" (*id.* ¶ 17); that the alleged misrepresentations "are contained in SEC filings, press releases, and other public statements that were primarily prepared in and disseminated from CarMax's corporate headquarters" and that "CarMax personnel who prepared and executed these documents . . . did so primarily form the Virginia corporate headquarters" (*id.* ¶ 18); and that the alleged misstatements "also originate from earnings calls . . . originating from CarMax's Virginia corporate headquarters" (*id.* ¶ 19). Mr. Cronheim further attests that none of

the individual Defendants reside in Maryland (*id.* ¶ 12); that no documents were prepared in Maryland (*id.* ¶ 18); and that "[n]one of the employees responsible for decisions on accounting, financial reporting, investor relations, or CAF loan loss accounting judgments is located in Maryland" (*id.* ¶ 22).

Plaintiffs, on the other hand, argue that "CarMax conducts substantial business in the District of Maryland, and many of the acts and practices complained of occurred in substantial part in this District." (ECF No. 51 at 10 (citing paragraph 9 of the operative complaint).) However, the paragraph to which Plaintiffs cite is:

> Venue is proper in this District pursuant to 28 U.S.C. §1391(b)-(c), and Section 27 of the Exchange Act, because CarMax conducts substantial business in this District, and many of the acts and practices complained of herein occurred in substantial part in this District. In its Form 10-K for the fiscal year ended February 28, 2025, filed with the SEC on April 11, 2025 ("FY25 Form 10-K"), the Company states that "[s]ince a large portion of our sales [are] generated in . . . Washington, D.C./Baltimore, our results of operations depend substantially on general economic conditions and consumer spending habits in these markets."

(ECF No. 39 ¶ 9.) Further, Plaintiffs' complaint and briefing do not elucidate what precise "acts and practices . . . occurred in substantial part in this District." Further, as Defendants point out, the language omitted from the language quoting the Form 10-K is "[s]ince a large portion of our sales is generated in the Southeastern U.S., California, Texas and Washington, D.C./Baltimore, our results of operations depend substantially on general economic conditions and consumer spending habits in these markets." (ECF No. 49-3.) And perhaps most critically, this is a shareholder action. Even if—as Plaintiffs allege—a large portion of CarMax sales occur in Baltimore, it is not at all clear what relevance that fact has to this action. Plaintiffs do not allege, for example, that a substantial proportion of *shareholders* live in Maryland or that any of the alleged misstatements occurred here.

Based upon the foregoing, the Court concludes that Plaintiffs' choice of forum should be accorded some weight, but not much. Although Plaintiff did select this forum, this is a class action,

Maryland is not Plaintiffs' home, and Maryland does not bear a substantial relation to the cause of action. The cases to which Plaintiffs cite do not compel a different conclusion. *See, e.g. Hill-Green v. Experian Info. Sols., Inc.*, Civ. No. 19-708, 2020 WL 5539042, at *6 (E.D. Va. Sept. 15, 2020) ("Even though as a class action it may not receive the great deference afforded to a single plaintiff's choice of forum, this choice is entitled to some deference."); *Manchin v. PACS Grp., Inc.*, Civ. No. 24-8636 (LJL), 2025 WL 1276569, at *9 (S.D.N.Y. May 1, 2025) ("[E]ven if the class overall does not disproportionately favor a certain forum, the fact that a plaintiff's choice of forum is given less weight in the class action context than in other contexts does not mean it is given no weight.").[1]

**B. Witness Convenience and Access**

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). "In this district, motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district." *Id.* (collecting cases). Moreover, "[i]nconvenience of non-party witnesses has more weight than inconvenience of party witnesses, who are presumed willing to travel to another forum." *Ramani v. Genesis Healthcare, Inc.*, Civ. No. GJH-19-3342, 2021 WL 211302, at *2 (D. Md. Jan. 21, 2021) (internal quotation marks and citation omitted).

Defendants explain that "two of the Individual Defendants—key witnesses in this putative securities class action—reside in Virginia" and that "not a single one of the CarMax employees

[1] The court in *Manchin* also explained that "an important corollary [to the general rule that 'where a plaintiff has brought a class action, the plaintiff's choice of forum is accorded less weight'] states that although a diffuse class is afforded less deference in its forum selection, when a disproportionate share of the class does have ties to a particular forum, that is a highly relevant consideration." *Manchin*, 2025 WL 1276569, at *9 (internal quotation marks and citation omitted). That circumstance is not present here. Although Plaintiffs allege that some large proportion of sales are generated in Washington, D.C. and Baltimore, as the Court has already noted, the class alleged here are those who acquired CarMax securities. Plaintiffs do not allege or argue that a "disproportionate share of the class" has ties to this District.

responsible for decisions on accounting, financial reporting, investor relations or CAF loan loss accounting judgments is located in Maryland." (ECF No. 49-1 at 12.) Defendants further explain that "[b]ecause Richmond is home to CarMax's corporate headquarters, where the press releases, earnings calls and quarterly and annual financial results at issue were prepared and issued, most other witnesses who can testify, for example, as to CarMax's performance at the time of the challenged statements and what was or was not disclosed and why will be located in or near Richmond, Virginia." (*Id.*) Mr. Cronheim attests that "[m]ost of the witnesses CarMax expects to call to testify in this case concerning business decisions, disclosures, public statements and internal controls and policies work at CarMax's corporate headquarters in Richmond." (ECF No. 49-4 at ¶ 20.) He further attests that "[i]n the event these witnesses are necessary for a hearing or trial, the absence of these individuals from their offices would cause a significant inconvenience for CarMax. This is especially true for Mr. Mayor-Mora, who continues to work out of the Virginia corporate headquarters." (*Id.* ¶ 21.)

This factor weighs in favor of a transfer, given the above arguments from Defendants. Plaintiffs identify no witnesses at all, but argue that the CAF business is located in Georgia. Thus, it may be true that "[s]ome witnesses will be inconvenienced no matter where this case is adjudicated." *Berg Corp. v. C. Norris Mfg., LLC*, Civ. No. JKB-19-00043, 2020 WL 231054, at *2 (D. Md. Jan. 15, 2020) (concluding that a transfer was warranted despite the presence of Maryland witnesses). But Plaintiffs do not argue that any witnesses are located in Maryland, so this is not a case where "transferring venue will only shift the balance of convenience because the proposed venue will be inconvenient for the plaintiffs' witnesses." *Topiwala v. Wessell*, Civ. No. WDQ-11-0543, 2012 WL 122411, at *7 (D. Md. Jan. 12, 2012) (internal quotation marks and citation omitted). The Court appreciates that, in considering a transfer, "employees of a party do

not factor as significantly because that party can obtain their presence at trial," *Dietrick*, 2019 WL 1745994, at *3 (citation omitted), but no party has identified any non-employee witnesses.

Further, the Court takes Plaintiffs' point that "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Topiwala*, 2012 WL 122411, at *7. However, Defendants have sufficiently detailed their inconvenience. Mr. Cronheim's declaration supports such a finding, given that he attested that "[m]ost of the witnesses CarMax expects to call to testify . . . work at CarMax's corporate headquarters in Richmond." (ECF No. 49-4 ¶ 20.) It is of course Defendants' burden to establish witness inconvenience, but—other than their assertion that substantial discovery is "likely to occur in Georgia"—Plaintiffs offer little argument and no evidence to act as a counterweight to Defendants' evidence that they will be inconvenienced. *See, e.g.*, *Dietrick*, 2019 WL 1745994, at *3 (finding a transfer appropriate even where "neither party, at this early stage of the litigation, proffers the particular location of non-party witnesses" because "the Court can reasonably infer in this FLSA class action that many will be near or in the transferring jurisdiction" given that "[defendant's] headquarters, the situs for personnel and employment decisions, is located within the proposed forum, as are many of its current employees.").

Thus, this factor weighs strongly in favor of a transfer.

### C. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Kukich*, 2017 WL 345856, at *8 (citation omitted). Where a transfer of venue would simply switch the inconvenience from the defendant onto the plaintiff, courts generally refuse to transfer cases. *Id.*

Defendants convincingly argue that a transfer is—at worst—neutral for the Plaintiffs, given that the named Plaintiffs are located hundreds of miles away from Maryland. Defendants also convincingly argue that Maryland is inconvenient to them, given that CarMax is headquartered in Richmond, and "given that Messrs. Nash and Mayor-Mora reside in Virginia and Mr. Mayor-Mora works from CarMax's corporate headquarters."[2] Plaintiffs argue that "[a]ny marginal convenience gained by Defendants from litigating 150 miles closer to CarMax's headquarters is offset by the corresponding inconvenience imposed on Plaintiff and its choice of forum," (ECF No. 51 at 14) and yet fail to articulate any inconvenience to Plaintiffs.

Plaintiffs' cited cases are inapposite. For instance, Plaintiffs cite *United States v. Guild*, Crim. No. 07-404 (JCC), 2007 WL 4125882 (E.D. Va. Nov. 19, 2007) for the proposition that "[c]ourts have recognized that where the proposed transferee forum is nearby, the convenience arguments carry little weight." (ECF No. 51 at 14.) However, not only was that a criminal case that did not involve § 1404(a), but the court also concluded that "[a]lthough not in the Eastern District of Virginia, [the defendant] is in the neighboring Federal District and, as pointed out by the Government, [his] residence is about the same distance from the courts in his District as from this court." *Guild*, 2007 WL 4125882, at *4. That is not so here.

This factor also strongly weighs in favor of a transfer.

**D. Interests of Justice**

"Consideration of the interests of justice is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005) (internal quotation marks and citation omitted).

[2] The Court is not persuaded by Plaintiffs' somewhat inflammatory remark that "[g]iven Defendants' easy access to the Company's private jet, 150 miles should pose little inconvenience." (ECF No. 51 at 14.)

> The final factor for a court's consideration is whether transfer is in the interest of justice. This factor is amorphous and somewhat subjective, and allows a court to consider many things. In assessing whether transfer would meet the interest of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties.

*Kimber v. Plus3 IT Sys., LLC*, Civ. No. ELH-18-3046, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019) (internal quotation marks and citations omitted).

There is no Maryland-specific interest in this case. As discussed above, there is no substantial connection to this District. It may be—and indeed likely is—true that class members reside in Maryland, but no more here than anywhere else. As Defendants put it: "that CarMax, a nationwide retailer, sells cars in Maryland (as well as many other states) does not create a Maryland-specific interest in a securities fraud case alleging that the corporate disclosures prepared and disseminated from CarMax's corporate headquarters in Virginia were false or misleading." (ECF No. 56 at 9.) Further, "as a nationwide class action involving application of federal statutory law, Maryland does not possess any particular interest in the fair resolution of this matter above any other forum." *See, e.g.*, *Dietrick*, 2019 WL 1745994, at *4; *see also Tse v. Apple Computer, Inc.*, Civ. No. L-05-2149, 2006 WL 2583608, at *6 (D. Md. Aug. 31, 2006) ("Maryland's interest in the case is no greater than that of any other state.").

Plaintiffs assert that judicial economy compels retention of this case, given that it was first filed here in November 2025, that the Court has already appointed lead Plaintiffs, and that there is a pending Motion to Dismiss. Although this is likely the strongest variable that would favor this Court's retention of this case, it does not carry the day. This case is still in its very early days, and the Court has not certified a class or otherwise decided any dispositive motions. While a transfer will, of course, result in some delay, the parties do not need to start from scratch in a new forum, and would presumably simply litigate the pending motion to dismiss there.

The Court finds that this factor is essentially neutral.

### *IV. Conclusion*

Given the foregoing discussion, where the Court has concluded that Plaintiffs' choice of forum is entitled to little weight and where the convenience of the parties and of witnesses strongly favors a transfer, the Motion will be granted and this case will be transferred to the Eastern District of Virginia. A separate order follows.

DATED this 23 day of September, 2026.

BY THE COURT:

James K. Bredar
James K. Bredar
United States District Judge